UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| CARLA D'ERRICO, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>*v.*<br><br>TR ACCOUNTANTS, INC. D/B/A TAX RELIEF ADVOCATES, a California corporation,<br><br>        *Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## **CLASS ACTION COMPLAINT**

Plaintiff Carla D'Errico. ("Plaintiff" or "D'Errico") brings this Class Action Complaint and Demand for Jury Trial against TR Accountants, Inc. d/b/a Tax Relief Advocates ("Defendant" or "Tax Relief Advocates") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making pre-recorded calls to cellular telephone numbers without consent, including calls to phone numbers that are registered on the National Do Not Call Registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff D'Errico, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### **PARTIES**

1.      Plaintiff D'Errico is a resident of Columbus, Ohio.

2.    Defendant Tax Relief Advocates is a California registered corporation headquartered in Irvine, California. Defendant Tax Relief Advocates conducts business throughout this District, Ohio and the United States.

## JURISDICTION AND VENUE

3.    This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.    This Court has personal jurisdiction over the Defendant since the Defendant made calls into this District. Venue is proper since the Plaintiff resides in this District.

## INTRODUCTION

5.    As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7.    By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

2

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in June 2024 alone, at a rate of 137.6 million calls per day. www.robocallindex.com (last visited July 7, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. TR Accountants Inc. operates using the d/b/a Tax Relief Advocates, as per the City of Irvine licensed business list.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://secure.cityofirvine.org/websearch/?webReportGridChangePage=248_50

15. Defendant Tax Relief Advocates provides tax resolution solutions to consumers throughout the US for a fee.[4]

16. Defendant Tax Relief Advocates uses pre-recorded calls to reach consumers *en masse* to find consumers who require tax resolution services.

17. For example, a consumer posted a voicemail that they received online that is identical to a voicemail that Plaintiff D'Errico received to her cell phone from Tax Relief Advocates:



---

[4] https://www.linkedin.com/company/tax-relief-advocates/about/
[5] https://www.reddit.com/r/grandrapids/comments/1dnisbr/weird_tax_call/#lightbox

18.     In response to the above voicemail, another consumer wrote, "I get these exact messages too. They want you to give them your personal information."[6]

19.     In other messages that consumers have posted online, an agent named "Heather" identifies the company name Tax Relief Advocates using a phone number that is nearly identical to the phone number Plaintiff was asked to call. For example:



> Transcription
>
> hi this is Heather with tax relief Advocates also known as tra I see that you filled out some information online asking for some help with a current tax issue you seem to be facing I want you to know great job I'm glad you reached out for help whatever the issue is we're going to be able to help you out whether it's on file tax years past due balances that are increasing or wage garnish shipments that you might have I have several programs I can pre qualify you for that could help reduce or eliminate what you owe you just got to give me a call back to discuss those options at only take a few minutes of your time you can reach me at 1 800-511-4164 again this is Heather with t are a feel free to check us out online it's Terry dot calm call me back today at again just a few minutes of your time to eliminate address again my number is 1 800 511 4164 again my number is 1 800 511 4164 thanks look forward to hearing from you have a great day
>
> 00:00 ───────●──────────── 00:59 [7]

20.     Defendant Tax Relief Advocates also places calls to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[6] Id.

[7] https://scammer.info/t/heather-with-tax-relief-advocates-also-known-as-tra-800-511-4164/157442

5

21.     To make matters worse, Tax Relief Advocates continues to place calls to phone numbers that are registered on the DNC despite being told to stop calling, as per Plaintiff's experience.

22.     Defendant's current and former employees have posted complaints online about telemarketing calls they had to place to angry consumers, drawing attention to a quality issue with the leads they were asked to call, including:



**Fun environment and great people, but job can be stressful**

Part-time Sales Opener (Current Employee) - Irvine, CA - April 16, 2024

The environment is fun, and the people are all delightful and energetic, but this is a tough sales job at times, with lots of people angry you're calling them 10 times a day. There's good money to be made, but this job isn't for the faint of heart. [8]

**They don't care about you, you're just a number, easily disposable, no real sales training**

Sales
Former Employee, less than 1 year    Irvine, CA

❌ Recommend    ❌ CEO Approval    ❌ Business Outlook

Pros
Easy to request time off or call out sick

Cons
Stressful, questionable leads, two faced people in charge [9]

[8] https://www.indeed.com/cmp/Tax-Relief-Advocates-1/reviews
[9] https://www.glassdoor.com/Reviews/Tax-Relief-Advocates-Reviews-E2183013.htm

6



**TRA**

👤 Sales/Opener

Current Employee, less than 1 year    📍 Irvine, CA

◯ Recommend    ◯ CEO Approval    ◯ Business Outlook

**Pros**
Work from home, Monday through Friday

**Cons**
Telemarketing, everyone thinks you're a spam caller.

**Advice to Management**
Train management better and explain the details of the business better. [10]

**Cons**
Only been here a few months. They reduced their overall commission structure shortly after I started. Once you fully understand how it works you realize it will take 4-5 months to maybe make 5K gross monthly income. There's low six figure potential if you can make it. I also underestimated how hostile dealing with 95% of the leads are where it's common to hang up on people all day long before having a civil conversation with a potential client. [11]

When you start out in sales you only get leads from an robo-dialer so you will get yelled at..ALOT - I had a couple people give me death threats too which was cool [12]

23.     Defendant also continues to call consumers who have specifically notified the Defendant to stop calling.

24.     Consumers have posted complaints directly to Tax Relief Advocates' Better Business Bureau page to address telemarketing calls they were receiving despite asking for the calls to stop, including:

- "***Company refuses to stop contacting me***. They call me every single day and hang up when I tell them I'm not interested. I've also called the customer service line and asked to have my name removed from the system with no success. I've tried to have my carrier block but they keep calling from different numbers so it's

---

[10] https://www.glassdoor.com/Reviews/Tax-Relief-Advocates-Reviews-E2183013_P2.htm?filter.iso3Language=eng
[11] https://www.glassdoor.com/Reviews/Tax-Relief-Advocates-Reviews-E2183013_P2.htm?filter.iso3Language=eng
[12] Id.

7

an endless, vicious, and very disruptive cycle. They call at various hours of the day and evening."[13] (emphasis added)

- "***This company has called me repeatedly without consent. My number is on the Do Not Call list***. The company refuses to provide any information regarding where they obtained my number or why they believe they have permission to call. They will not provide names or contact information for company owners or executives and will hang up the phone when asked about their telemarketing or how numbers to call are obtained."[14] (emphasis added)

- "***Endless calls*** inferring I owe taxes. An absolute scam and ***harassing***."[15] (emphasis added)

- "Company called my cell phone and left a message. ***They are using an automated dialer*** yet I gave no consent to call my cell nor have any dealings with this company. This is a TCPA violation. ***They left a message saying I owe them back taxes***. They are not the **** How do I owe them back taxes? They are lying to extort money and using illegal ways to do it. This is a TCPA violation which needs to be paid to me in the amount of $500."[16]

- "In less than 24 hours, I have received 6 phone calls from this business. I did not sign up for tax relief, and believe that they either obtained my information from a survey app, or bought it from some other company. ***I am not interested, and answered a call yesterday asking them to stop calling***, but the caller ended the call."[17] (emphasis added)

25. In response to these calls, Plaintiff D'Errico brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

### PLAINTIFF D'ERRICO'S ALLEGATIONS

26. Plaintiff D'Errico is the subscriber of the cell phone number ending in 6980.

27. Plaintiff D'Errico registered her cell phone number on the DNC on April 19, 2016.

---

[13] https://www.bbb.org/us/ca/brea/profile/tax-representative/tax-relief-advocates-1126-172019525/complaints

[14] https://www.bbb.org/us/ca/brea/profile/tax-representative/tax-relief-advocates-1126-172019525/complaints?page=2

[15] Id.

[16] https://www.bbb.org/us/ca/brea/profile/tax-representative/tax-relief-advocates-1126-172019525/complaints?page=3

[17] Id.

8

28.     Plaintiff D'Errico uses her cell phone number for personal use only as one would use a landline telephone number in a home.

29.     Plaintiff D'Errico does not own any other phone numbers, only her cell phone number.

30.     Plaintiff D'Errico uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household needs.

31.     Plaintiff D'Errico has never had her cell phone number associated with a business.

32.     This phone number is not used in any business or marketing materials.

33.     Plaintiff D'Errico went on Bark.com to inquire about finding a tax agent.

34.     Plaintiff D'Errico provided her phone number to Bark.com, which entailed providing consent for up to 5 professionals to contact her:



## Your number is safe with us.

Some matches prefer to provide quotes over the phone to get more details.

Phone number

Back                    Continue

Bark will provide your information to up to 5 professionals who may contact you about your project. By clicking "Continue" and submitting this form, you expressly consent that such professionals may call or text you on the phone number you provided to offer their services (these calls may be made using automated phone technology). Consent is not a condition of purchasing or receiving any of the services. [18]

---

[18] https://www.bark.com/en/us/

35. The consent form, as shown above, does not indicate which companies will contact the consumer who fills out the form.

36. Additionally, the form does not clearly and conspicuously state that the Plaintiff is agreeing to receive pre-recorded calls.

37. Shortly after filling out a form on Bark.com, Plaintiff D'Errico began receiving solicitation calls to her cell phone regarding tax services.

38. On June 17, 2024 at 9:44 AM, Plaintiff D'Errico received an email from Bark.com letting her know that Tax Relief Advocates was interested in Plaintiff's Tax Accountant request and that Tax Relief Advocates would be contacting her:

10



39.     Plaintiff D'Errico was interested in getting an individual tax agent. She was not looking to get a company involved and was not interested in dealing with or speaking to Tax Relief Advocates. She did not feel that Bark connected her to a company that would resolve her tax needs.

40.     In response to this email, Plaintiff D'Errico clicked on "Close your request" on Bark.com's website.

41.     When Plaintiff D'Errico closed her request, she was under the impression that this would stop the solicitation calls that she would have otherwise received.

42.     1 minute after receiving the aforementioned email, at 9:45 AM on June 17, 2024, Plaintiff D'Errico received a call to her cell phone from 614-391-0865.

43.     This call was not answered but a voicemail was left identifying the company name Tax Relief.

44.     Based on the timing of the voicemail and the email that she received from Bark.com, Plaintiff D'Errico believes that the voicemail was left by Tax Relief Advocates.

45.     On June 17, 2024 at 1:13 PM, Plaintiff D'Errico received a text message to her cell phone from 949-356-9287 identifying the company name Tax Relief Advocates.

46.     At 1:15 PM on June 17, 2024, Plaintiff D'Errico texted a stop request to Tax Relief Advocates:



47.     Despite her clear stop request and the closing of her Bark.com request, Plaintiff D'Errico received additional calls to her cell phone number:

- June 17, 2024 at 5:49 PM from 614-391-0884 – missed call
- June 18, 2024 at 11:55 AM from 614-391-0889 – missed call
- June 18, 2024 at 6:36 PM from 614-391-0871 – missed call

- June 19, 2024 at 2:22 PM from 614-391-0867 – missed call

48. When the phone numbers referenced above are dialed, they all lead to the same voicemail regarding tax debt relief services.

49. On June 19, 2024 at 5:47 PM, Plaintiff D'Errico received a call to her cell phone number from 614-391-0861.

50. This call was not answered but a pre-recorded voicemail was left stating:

"Hey, it's Alex with Tax Relief Group. I left you a message yesterday and was hoping to reach you. Hopefully you can find some time to give me a quick ring back today. It's super important that we chat so call me at 1-800-511-4174. If you have unfiled tax years, balances that are increasing because of penalties and interest, garnishments, bank levies, or even a revenue officer assigned to your case, you really need to give me a call back. Look, I know this is probably the last thing you want to deal with but once you call me, we can get you pre-qualified and then we'll just take it from here and get the stress of all of this off your shoulders once and for all. My number is 1-800-511-4174. You're going to call me today and I'm going to help you and I can't wait to talk to you. Talk to you soon."

51. 800-511-4174 is owned/operated by Tax Relief Group.[19]

52. Plaintiff D'Errico believes that this voicemail was pre-recorded because the message does not reference her by name, she did not receive a voicemail on June 18, 2024 and because another consumer posted the same exact voicemail that they received on June 24, 2024:

---

[19] Based on an investigation conducted by Plaintiff's attorneys.

13



53.    Plaintiff D'Errico received additional calls to her cell phone number:

- June 19, 2024 at 6:28 PM from 614-391-0859 – missed
- June 20, 2024 at 4:53 PM from 614-391-0878 – missed
- June 20, 2024 at 7:34 PM from 614-391-0884 – missed
- June 21, 2024 at 1:17 PM from 614-391-0875 – missed
- June 21, 2024 at 6:36 PM from 614-391-0875 – missed
- June 21, 2024 at 7:12 PM from 614-391-0891 – missed
- June 22, 2024 at 11:57 AM from 614-391-0864 – missed
- June 22, 2024 at 12:38 PM from 614-391-0874 – missed
- June 22, 2024 at 3:19 PM from 614-391-0884 – missed
- June 24, 2024 at 12:34 PM from 614-391-0891 – missed
- June 24, 2024 at 3:27 PM from 614-391-0885 – missed
- June 25, 2024 at 11:09 AM from 614-391-0861 – missed

54.    When the phone numbers referenced above are dialed, they all lead to the same voicemail regarding tax debt relief services, meaning they are all related to the same company.

---

[20] https://www.reddit.com/r/grandrapids/comments/1dnisbr/weird_tax_call/

14

55.    On June 26, 2024 at 5:58 PM, Plaintiff D'Errico received a call to her cell phone from 220-213-7094.

56.    This call was not answered but a pre-recorded voicemail was left stating:

"Yo, where have you been? I get you're busy but your balances are increasing every day you don't call me back and get the ball rolling on this tax issue that you're dealing with. This is Alex again with Tax Relief Group. You reached out to us a few weeks ago and I've been waiting for you to return my call about your initial inquiry requesting for us to help you with your taxes. So, guess what? Today's the day. You're going to call me back. I can feel it. My number is 1-800-511-4174. When you call me today, we'll do a quick consultation over the phone, we'll only take a few minutes of your time, and we'll see how much money we can save you. My calendar's booking up quick so call me back. My number again is 1-800-511-4174. Look forward to hearing from you."[21]

57.    Plaintiff D'Errico believes that this voicemail was pre-recorded because the message does not reference her by name, she did not reach out weeks before receiving this voicemail, and because another consumer posted the same exact voicemail that they received on Youmail.com:

> ⌒⌒ Yo, where have you been? I get you're busy, but your balances are increasing. Every day you don't call me back and get the ball rolling on this tax issue that you're dealing with. This is Alex again with Tax Relief Group. You reached out to us a few weeks ago and I've been waiting for you to return my call about your initial inquiry, requesting for us to help you with your taxes. So guess what? Today's the day. You're gonna call me back. I can feel it. My number is 18005114174 When you call me today, we'll do a quick consultation over the phone. We'll only take a few minutes of your time and we'll see how much money we can save you. My calendar's booking up quick, so call me back. My number again is 18005114174 Look forward to hearing from you. [22] [23]

58.    Plaintiff D'Errico received additional unsolicited calls to her cell phone on:

- June 29, 2024 at 11:38 AM from 220-213-7216 - missed
- July 1, 2024 at 1:06 PM from 614-391-0862 – missed
- July 2, 2024 at 5:46 PM from 614-391-0869 - missed
- July 3, 2024 at 2:50 PM from 614-391-0871 – missed
- July 6, 2024 at 3:38 PM from 614-391-0879 – missed
- July 7, 2024 at 5:00 PM from 220-213-7091 – missed

---

[21] https://www.dropbox.com/scl/fi/xltxxt5waytu5hh25vigu/VoiceMail_2024-06-28_09-40-13.amr?rlkey=4njmbsp3geyu36n1k5krtfut3&dl=0
[22] https://directory.youmail.com/phone/866-291
[23] https://media.youmail.com/mcs/glb/audio/s6diZGlyXzJkMmRpcjp0b21jYXQ4MDYyOjE3MTYzNDY5NjY2Y2ODBBit9o0m.gen.mp3

- July 9, 2024 at 6:19 PM from 220-213-7094 – missed
- July 11, 2024 at 5:02 PM from 614-391-0885 – missed
- July 12, 2024 at 12:11 PM from 614-618-8173 – missed
- July 13, 2024 at 12:49 PM from 614-391-0890 - missed

59.     When the phone numbers referenced above are dialed, they all lead to the same voicemail regarding tax debt relief services. When a live agent does answer, the company name Tax Relief is stated.

60.     On July 20, 2024 at 3:06 PM, Plaintiff D'Errico received an unsolicited call to her cell phone from 614-391-0873:



*Figure 1 - July 20, 2024*

61.     When this call was answered, an employee said that they were calling from Tax Relief Services and asked if Plaintiff has any tax debt.

62.     Plaintiff D'Errico told the employee that she doesn't and that the Defendant had been calling her for approximately 2 months.

63.     In response, the employee hung up.

64.     The unauthorized solicitation telephone calls that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff D'Errico in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

65.     Seeking redress for these injuries, Plaintiff D'Errico, on behalf of herself and a Classes of similarly situated individuals, brings suit under the TCPA.

16

## CLASS ALLEGATIONS

66. Plaintiff D'Errico brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent on Defendant's behalf) called on their cellular telephone number (2) using a pre-recorded voice message.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

67. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff D'Errico anticipates the need to amend the Class definitions following appropriate discovery.

68. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and

17

Plaintiff is a member of the Classes because he received calls as part of the same campaign resulting in calls to other Class members.

69. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    whether Defendant made calls using a pre-recorded voice to cellular telephone numbers without consent;

(b)    whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)    whether Defendant's conduct constitutes a violation of the TCPA; and

(e)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

70. **Adequate Representation**: Plaintiff D'Errico will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in class actions. Plaintiff D'Errico has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff D'Errico and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff D'Errico nor her counsel have any interest adverse to the Classes.

71. **Appropriateness**: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff D'Errico Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff D'Errico and the Pre-recorded No Consent Class)**

72.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

73.     Defendant Tax Relief Advocates transmitted unwanted solicitation telephone calls to Plaintiff D'Errico and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

74.     These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff D'Errico and the other members of the Pre-recorded No Consent Class.

75.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff D'Errico and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation, as well as injunctive relief.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff D'Errico and the Do Not Call Registry Class)**

76.     Plaintiff repeats and realleges paragraphs 1-71 of this Complaint and incorporates them by reference herein.

77.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

78.     Any "person who has received more than one telephone call within any 12-month

20

period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

79. The Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff D'Errico and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. The Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff D'Errico and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

81. As a result of Defendant's conduct as alleged herein, Plaintiff D'Errico and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

82. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff D'Errico and the Internal Do Not Call Class)**

83. Plaintiff repeats and realleges paragraphs 1-71 of this Complaint and incorporates them by reference herein.

84. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for

21

telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

85.     The Defendant placed calls to Plaintiff D'Errico and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

86.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

87.     The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff D'Errico and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff D'Errico individually and on behalf of the Classes, prays for the following relief:

a)     An order certifying this case as a class action on behalf of the Classes; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)     An award of damages and costs;

c)     An order declaring that Defendant's actions, as set out above, violate the TCPA;

23

d)    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)    Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff D'Errico requests a jury trial.

**CARLA D'ERRICO**, individually and on behalf of all others similarly situated,

DATED this 6th day of August, 2024.

By: /s/ *Brian T. Giles*

Brian T. Giles (0072806)
Giles & Harper, LLC
7247 Beechmont Avenue,
Cincinnati, Ohio 45230
Telephone: (513) 379-2715
bgiles@gilesharper.com

Avi R. Kaufman
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

24